UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ALMA DENISE RICE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:23-cv-376 (IDD) |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION**

This matter is before the Court on the parties' cross-motions for summary judgment. (Dkt. Nos. 9, 14). Pursuant to 42 U.S.C. § 405(g), Alma Denise Rice ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying her claim for disability insurance benefits ("DIB") under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–34, 1381-83. For the reasons stated below, Plaintiff's Motion for Summary Judgment (Dkt. No. 9) is **DENIED**, and Defendant's Motion for Summary Judgment (Dkt. No. 14) is **GRANTED**.

**I. PROCEDURAL BACKGROUND**

Plaintiff filed an application for DIB on March 9, 2021, and for Supplemental Security Income ("SSI") on January 12, 2022, alleging disability since December 29, 2018, due to type II diabetes and limited vision in the left eye. Administrative Record ("R.") at 33, 74. Plaintiff's claims were denied initially on August 3, 2021, and again on reconsideration on December 7, 2021. R. at 74-86. Plaintiff requested an administrative hearing before an Administrative Law Judge ("ALJ"), which the ALJ held on June 22, 2022. R. at 49-67, 104-05. On June 27, 2022, the ALJ issued a

1

decision finding that Plaintiff was not disabled within the meaning of the Act. R. at 33-42.

On February 9, 2023, the Appeals Council for the Office of Disability and Adjudication denied Plaintiff's request for review of the ALJ's decision, rendering the ALJ's decision the final decision of the Commissioner for purposes of review under 42 U.S.C. § 405(g). R. at 1-3. Having exhausted her administrative remedies, Plaintiff filed the instant suit challenging the ALJ's decision on March 21, 2023. Dkt. No. 1. On August 23, 2023, the parties filed their Consent to the Exercise of Jurisdiction by a United States Magistrate Judge. Dkt. No. 12. On August 28, 2023, the Honorable U.S. District Judge Patricia Tolliver Giles, ordered that the case be reassigned to the undersigned. Dkt. No. 13. On August 21, 2023, and September 20, 2023, the parties filed their respective cross-motions for summary judgment, and this matter is ripe for disposition. Dkt. Nos. 9, 14.

## II. **STANDARD OF REVIEW**

In reviewing the Commissioner's decision to deny benefits, a district court "must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue,* 667 F.3d 470, 472 (4th Cir. 2012) (alteration in original) (citation omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It is more than a mere scintilla but less than a preponderance of the evidence. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). An ALJ is required to analyze all relevant evidence and sufficiently explain his or her findings. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997). Review is highly deferential, and the Court should not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Johnson v. Barnhart*, 434 F.3d 650, 653. However, if the ALJ's

2

determination is not supported by substantial evidence in the record, or if the ALJ has made an error of law, the district court must reverse the decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). The Commissioner's factual findings, if supported by substantial evidence, are conclusive and must be affirmed. *Perales*, 402 U.S. at 390.

The Fourth Circuit applies a harmless error analysis to social security DIB determinations. *See Mascio v. Colvin*, 780 F.3d 632, 639 (4th Cir. 2015). The harmless error doctrine applies when the ALJ's decision is "overwhelmingly supported by the record though the agency's original opinion failed to marshal that support" and a remand would be "a waste of time." *Williams v. Berryhill*, No. 1:17-CV-167, 2018 WL 851259, at *8 (E.D. Va. Jan. 18, 2018) (citing *Bishop v. Comm'r of Soc. Sec.*, 583 Fed. Appx. 65, 67 (4th Cir. 2014) (per curiam)). A harmless error occurs when a court can conclude on the basis of the ALJ's entire opinion that the error did not substantively prejudice the claimant. *See Lee v. Colvin*, No. 2:16-CV-61, 2016 WL 7404722, at *8 (E.D. Va. Nov. 29, 2016). When conducting a harmless error analysis, a court must estimate "the likelihood that the result would have been different." *See Morton-Thompson v. Colvin*, No. 3:14-CV-179, 2015 WL 5561210, at *7 (E.D. Va. Aug. 19, 2015) (citing *Shineski v. Sanders*, 556 U.S. 396, 411–12 (2009)).

### III. DETERMINING DISABILITY AND THE ALJ'S DECISION

#### A. Determining Disability and the Sequential Analysis

The Social Security Regulations define "disability" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). To meet this definition, the claimant must have a severe impairment or impairments that make it impossible to do past relevant

3

work or any other substantial gainful activity that exists in the national economy. *Id.*; *see also Heckler v. Campbell*, 461 U.S. 458, 460 (1983). The ALJ is required to employ a five-step sequential evaluation in every Social Security disability claim analysis to determine the claimant's eligibility. Specifically, the ALJ must consider whether the claimant: (1) is engaged in substantial gainful activity;[1] (2) has a severe impairment; (3) has an impairment that equals a condition contained within the Social Security Administration's official Listing of Impairments; (4) has an impairment that prevents past relevant work;[2] and (5) has an impairment that prevents her from any substantial gainful employment. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). After step three of the analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 416.920(e)–(f), 416.945(a)(1). *Morris v. Berryhill*, No. 3:16-CV-587, 2017 WL 4112365, at *6 (E.D. Va. Aug. 30, 2017), *report and recommendation adopted*, 2017 WL 4108939 (E.D. Va. Sept. 15, 2017).

### B. The ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 29, 2018. R. at 36. At step two of the sequential evaluation, the ALJ found that Plaintiff had various medically determinable impairments. *Id.* The ALJ found the following impairments to be severe: diabetes mellitus, diabetic retinopathy, and diabetic neuropathy. *Id.* The ALJ also noted that Plaintiff's medical record

---

[1] Substantial gainful activity ("SGA") is work that is both substantial and gainful as defined by the Agency in the Code of Federal Regulations. Substantial work activity "involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks, hobbies, therapy, school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

[2] Past relevant work is defined as substantial gainful activity in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 404.1560(b), 404.1565(a).

4

contains evidence of hypertension, but the ALJ did not find this to be a severe impairment. *Id.*

At step three of the sequential analysis, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

In between steps three and four of the sequential evaluation, the ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), with the following limitations: Plaintiff must avoid concentrated exposure to hazards, such as dangerous machinery and unprotected heights, but Plaintiff can push and pull with the bilateral upper and lower extremities; frequently climb ramps and stairs; occasionally climb ropes, ladders, and scaffolds; and frequently perform tasks requiring near and far acuity with both eyes and depth perception with the left eye. R. at 37.

At step four of the sequential evaluation, the ALJ found that Plaintiff was capable of performing past relevant work as a medical clerk. R. at 41. Because the ALJ concluded that Plaintiff could perform past relevant work as a medical clerk, the ALJ was not required to reach the fifth and final step of the sequential evaluation. *Id.* Based on the above, the ALJ concluded that Plaintiff did not suffer from a disability, as defined by the Social Security Act, from December 29, 2018 to the date of the ALJ's decision. *Id.*

## IV.  ANALYSIS

### A. Cross-Motion for Summary Judgment

Plaintiff moves for summary judgment based on three alleged errors in the ALJ's decision: (1) that the ALJ's RFC determination lacks substantial evidence because the ALJ failed to evaluate opinion evidence, (2) that the ALJ did not adequately explain his reasoning as to why Plaintiff's subjective complaints were deemed inconsistent with the evidence of record, and (3) that the ALJ's

RFC determination is unsupported by substantial evidence due to the ALJ's not explaining the origin of Plaintiff's optical limitations. Pl.'s Br. at 1. Defendant seeks summary judgment on the grounds that substantial evidence supports the ALJ's decision, including the ALJ's evaluation of medical opinion evidence, Plaintiff's subjective claims, and Plaintiff's optical limitations. Def.'s Mem. at 1-2.

### B. RFC Determination and Medical Opinion Evidence

Plaintiff first argues that in reaching the RFC determination, that Plaintiff is able to perform light work with limitations, the ALJ improperly evaluated the opinion of Plaintiff's treating physician, Dr. Mei. Pl.'s Br. at 7. Plaintiff asserts the ALJ's evaluation was deficient for failing to adequately address the supportability and consistency of Dr. Mei's opinion. *Id.* at 7-8. Defendant argues that the ALJ acknowledged that Dr. Mei's opinion was from a treating source and adequately explained why the ALJ found the opinion to be unsupported by the treating source records and inconsistent with the remainder of the record. Def.'s Mem. at 12.

In determining the appropriate weight to be given to medical evidence and prior administrative medical findings, the ALJ must consider the following factors: (1) the length of the treating source relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability based upon the medical record; (4) consistency between the opinion and the medical record; (5) any specialization on the part of the treating source; and (6) any other relevant factors brought to the ALJ's attention which tend to support or contradict the medical opinion. *See* 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The ALJ "is not required to set forth a detailed factor-by-factor analysis," however, it must "be apparent from the ALJ's decision that he meaningfully considered *each* of the factors before deciding how much weight to give the opinion." *Dowling v. Comm'r, Soc. Sec. Admin.*, 986 F.3d 377, 385 (4th Cir. 2021). However, the

most important factors to be considered in evaluating the persuasiveness of medical opinions are supportability and consistency, and the regulations require the ALJ to explain, at minimum, how these factors were considered for a medical source's medical opinion. 20 C.F.R. §§ 404.1520c, 416.920c.

As to the supportability factor, the ALJ will find that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive" the opinion will be. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor means "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Additionally, the ALJ must explain in sufficient detail how such evidence is considered and how it affects the ALJ's ultimate conclusions regarding disability. *See Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013).

Plaintiff first asserts that the ALJ did not and could not adequately address the supportability factor in the decision because the ALJ did not explicitly recognize that the Virginia Hospital Center ("VHC") opinion was written by Dr. Mei. Pl's. Br. at 7. Defendant's counter that it was not necessary for the ALJ to refer to the opinion's author by name because it was sufficient that the ALJ explicitly acknowledged that the opinion was from a treating source. Def.'s Mem. at 12; *see* R. at 40. While Plaintiff asserts that it would not be possible for the ALJ to perform the supportability analysis without addressing Dr. Mei by name, the ALJ states that the "opinion is unsupported by the treating source objective observations." R. at 41.

Plaintiff's claim was filed after March 27, 2017. R. at 73. Therefore, the ALJ considers the persuasiveness of a medical opinion or prior administrative finding, instead of assigning

7

controlling evidentiary weight. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Plaintiff argues that because the ALJ did not explicitly recognize that Dr. Mei authored the VHC opinion, the ALJ could not conduct a proper supportability analysis. Pl.'s Br. at 7. However, the ALJ did note that the VHC opinion was authored by a treating source, and, nevertheless, the ALJ had sufficient evidence to find that the VHC opinion was unsupported by Dr. Mei's own objective medical observations in the record. R. at 41, 1143. Dr. Mei's physical assessment found that the Plaintiff can sit for 4 hours in an 8-hour workday, stand and walk for 0 hours, would require 15-minute-breaks 3-4 times per day, occasionally lift less than 10 pounds, and would be absent from work 3-4 times per month due to her impairments. R. at 1085-1086. However, Dr. Mei's progress notes found no abnormalities in Plaintiff's physical limitations, besides those associated with her vision, and all of Plaintiff's cardiovascular, pulmonary, abdominal, musculoskeletal, and neurological testing were normal. R. at 1143. Dr. Mei's opinion also does not identify any attention or concentration deficits that support Dr. Mei's recommendation. *Id.* In Plaintiff's physical exam, Dr. Mei noted that there was no muscle tenderness, joint tenderness, or joint swelling. *Id.* Accordingly, the ALJ had sufficient evidence to conclude that Dr. Mei's medical opinion was unsupported by Dr. Mei's own objective observations. R. at 40-41.

As to the consistency factor, the ALJ considered the examinations of the State Agency medical consultants and other examinations at VHC, noting that Plaintiff consistently demonstrated normal strength and range of motion in all four extremities during her medical examinations. R. at 41. Accordingly, the ALJ concluded from those examinations and the objective observations of the examining providers that Dr. Mei's opinion was inconsistent with the other medical evidence in the record, and the ALJ cited to the relevant portions of Plaintiff's medical records which supported this finding. *Id.* (citing 1F, 2F, 5F, 11F, 15F, 16F). The ALJ cited more

specific potions of the record in support of this position, including other examinations at VHC where Plaintiff demonstrated normal strength, normal range of motion, no sensory deficits, and no muscle tenderness or swelling, and that Plaintiff was alert and neurologically intact. R. at 352-53, 364, 398-99, 766. Looking to the portions of the record which the ALJ cited throughout his opinion, the ALJ had sufficient evidence to conclude that the VHC opinion was inconsistent with the totality of the other objective medical evidence. R. at 41.

Plaintiff asserts that the ALJ did not address the supportability and consistency of the medical doctor's opinion. Pl.'s Br. at 9-10. Plaintiff cites to *Derek L. v. Kijakazi*, in which the court found that the ALJ did not sufficiently articulate how he determined the persuasiveness of medical opinions. *Id.* In *Derek L.*, the ALJ offered a legally deficient explanation on the consistency factor when considering the doctor's opinion against other medical evidence in the record and did not address and articulate the supportability factor at all. *Derek L. v. Kijakazi*, No. 3:20-cv-00070, WL 636410, at *7 (W.D. Va. Mar. 3, 2022). The ALJ in *Derek L.* determined that the claimant's examinations were not consistent with the doctor's opinion but did not cite to any specific examinations or findings that he found to be inconsistent. *Id.* at 24. Here, the ALJ considered Dr. Mei's medical opinion under the supportability and consistency factors and found that it was unsupported by her own objective observations and was inconsistent with medical records from VHC and the State Agency's medical opinion. R. at 41. In support of this finding, the ALJ cited to specific and relevant portions of the underlying record. *Id.* Therefore, the ALJ in this matter properly conducted the persuasiveness analysis as to Dr. Mei's medical opinion, and this determination did not suffer from the same deficiencies as the ALJ decision in *Derek L. See id.*; *Derek L.*, WL 636410, at *7. Plaintiff did not cite any other evidence from the medical record that would corroborate Dr. Mei's medical opinion. *See* R. at 38-39; Pl.'s Br. at 6-10; Pl.'s Reply at 1-

3. Accordingly, the undersigned finds that the ALJ's determination as to the persuasiveness of Dr. Mei's medical opinion was sufficiently articulated and is supported by substantial evidence.

### C. Plaintiff's Subjective Complaints

Plaintiff next argues that the ALJ failed to provide his reasoning for finding Plaintiff's subjective complaints to be inconsistent with the evidence of record. Pl.'s Br. at 11. Defendant asserts that the ALJ sufficiently articulated his reasoning for finding Plaintiff's subjective complaints to be not entirely consistent with the evidence of record and that this finding is supported by substantial evidence. Def.'s Mem. at 17.

When evaluating a claimant's symptoms, the ALJ must apply the two-step evaluation process set forth in 20 C.F.R. §§ 404.1529, 416.929. *See Arakas v. Comm'r of Soc. Sec.*, 983 F.3d 83, 95 (4th Cir. 2020). First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16-3p. Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine their effect on claimant's ability to work and whether the claimant is disabled. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p. An ALJ's evaluation of a claimant's subjective complaint will stand only if the ALJ "build[s] an accurate and logical bridge from the evidence to his conclusion." *See Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016). A reviewing court will submit to deferential substantial-evidence standard when an ALJ has justified their reasoning by more than a scintilla of evidence. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1155.

Plaintiff asserts that the Fourth Circuit's holding in *Arakas* should be applied in the instant case. Pl.'s Br. at 11. In *Arakas*, the Fourth Circuit held that objective evidence is not required to find a claimant disabled where a claimant suffers from an impairment, such as fibromyalgia, that

10

eludes objective clinical or laboratory diagnostic techniques. *Arakas*, 983 F.3d at 95. The Fourth Circuit explained that for claimants with such impairments, the claimant's statements about the limiting effects of symptoms should not be discredited merely because the objective medical evidence does not substantiate them. *Id.* In *Arakas*, the ALJ improperly discredited the claimant's statements about the limiting effects of her fibromyalgia symptoms because they were not "completely consistent with the objective evidence." *Id.* at 96. The *Arakas* ALJ focused on medical opinions that failed to reveal any type of significant clinical abnormalities one would expect if the claimant were disabled and continued to cite to the claimant's full range of motion in her joints and extremities. *Id.* The Fourth Circuit recognized that fibromyalgia is a disease with "symptoms [that] are entirely subjective," and, accordingly, that fibromyalgia symptoms cannot be fully understood through objective indicators. *Id.*

In the instant matter, Plaintiff's impairments, diabetes mellitus, diabetic retinopathy, and diabetic neuropathy do present objective symptomatologic measurements, and it is, therefore, not an impairment akin to fibromyalgia, an impairment whose symptoms are entirely subjective. *See Simpkins v. Kijakazi*, 2023 WL 3114937 at *17 (D.S.C. Apr. 27, 2023) (noting that as an impairment, diabetes is not like fibromyalgia in terms of its objective indicators). Accordingly, *Arakas* does not apply because Plaintiff's impairments do present objective symptomology and measurements. R. at 40-41. Additionally, the ALJ in this case did acknowledge Plaintiff's subjective complaints and cited to the objective medical observations to explain that Plaintiff's subjective complaints were inconsistent with the medical record as a whole. *Id*.

At the hearing on June 22, 2022, the ALJ assessed the claimant's subjective symptoms caused by the Plaintiff's type II diabetes and visual impairment of her left eye. R. at 49-67. The ALJ underwent a two-step test to evaluate a claimant's symptoms. R. at 37. Under step one, the

11

ALJ found that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms. R. at 38. Under step two, the ALJ found that the Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with the totality of the evidence and ultimately determined that they were not disabling. *Id.* The ALJ found that while there was a documented history of diabetes mellitus, retinopathy, and neuropathy, they would not cause debilitating effects in Plaintiff's functional abilities. *Id.* The ALJ reached this conclusion based on Plaintiff's physical examinations that demonstrated no muscle or joint tenderness, normal range of motion, normal strength, and no neurological or sensory issues, aside from those associated with her vision. *Id.*; R. at 1143. The ALJ concluded that Plaintiff could perform work at a light exertional level with postural, manipulative, environmental, and visual limits. R. at 41.

The ALJ properly evaluated the Plaintiff's subjective complaints by applying the two-step analysis, concluding that while the medically determinable impairments could cause the alleged symptoms, those symptoms were not consistent with the evidence in the Plaintiff's medical record. R. at 38. Objective medical reports indicated that the Plaintiff had no cardiovascular, musculoskeletal, or neurological abnormalities. R. at 40. Accordingly, the ALJ, here, did consider Plaintiff's subjective symptoms in his analysis and determined that because the objective medical reports indicated that Plaintiff had no neurological, sensory, or musculoskeletal issues, Plaintiff's subjective complaints were inconsistent with the medical record as a whole. R. at 38-39.

The ALJ adequately considered Plaintiff's subjective complaints. *See* R. at 41. The ALJ considered VHC examination findings, the State Agency's examinations, and Plaintiff's subjective complaints and found that they were inconsistent with one another. R. at 78, 84, 1085-1086, 1143. The ALJ concluded that Plaintiff's alleged symptom of limited mobility was inconsistent with the

medical records that indicated she had normal strength and range of motion in all four extremities. R. at 40-41, 1085-1086. The ALJ sufficiently built a logical bridge between the Plaintiff's medical records, her subjective complaints, and his denial of benefits. Plaintiff's subjective complaints of her symptoms were inconsistent with her previous medical treatment history. R. at 38-39; *see Monroe*, 826 F.3d at 189. The undersigned finds that the ALJ sufficiently articulated his reasoning for finding Plaintiff's subjective complaints not to be entirely consistent with the evidence of record, and this finding is supported by substantial evidence.

### D. Optical Limitations

Lastly, Plaintiff argues that the ALJ failed to provide the logical explanation between the evidence of record and its conclusion in determining Plaintiff's RFC, that Plaintiff was capable of frequent near and far acuity as well as depth perception on the left side. Pl's Br. at 13-14. Plaintiff asserts that this error was particularly impactful to the overall outcome because Plaintiff's past work as a hospital clerk requires frequent near acuity. *Id.* at 15. Defendant counters that the ALJ did provide the requisite "logical bridge" between the evidence of record and the conclusion on this point, and that this finding is supported by substantial evidence. Def.'s Br. at 22-24.

The ALJ must consider all of a claimant's physical and mental impairments, severe and otherwise, and determine on a function-by-function basis how they affect the claimant's ability to work. *See Monroe*, 826 F.3d at 188. An ALJ conducts an RFC assessment by including a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence. *See* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). A proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion*. See Thomas v. Berryhill*, 916 F.3d 307 (4th Cir. 2019).

Here, the ALJ relied on medical reports to inform his RFC decision related to Plaintiff's

13

vision. R. at 40-41. The first report summarized Dr. Rutherford's findings that Plaintiff's vision was "limited" in both eyes with respect to near and far acuity and "limited" in her left eye with respect to depth perception. R. at 78. Additionally, Dr. Rutherford limited Plaintiff to occasional climbing of ladders, ropes, and scaffolds, and frequent balancing, and avoidance of concentrated exposure to hazards due to her visual limitations. R. at 78-79. Dr. Rutherford found that the Plaintiff would be capable of a medium RFC with visual limitations only in the left eye. R. at 79. The second report summarized Dr. Godwin's findings that Plaintiff's vision also was "limited" in her near and far acuity in both eyes and "limited" in her left eye with respect to depth perception. R. at 84. Additionally, Dr. Godwin limited Plaintiff to frequent climbing of ramps and stairs, occasional climbing of ladders, ropes, and scaffolds, and avoidance of concentrated exposures of hazards due to her visual limitations. R. at 84-85.  Dr. Godwin found that the Plaintiff would be capable of a medium RFC with visual limitations. R. at 85. The ALJ found that the claimant's visual activity was 20/100 -1 on the left and 20/60 -1 on the right, based on State Agency medical consultants, which supported frequent performance of tasks requiring near and far acuity bilaterally, as well as frequently performing tasks requiring depth perception with the left eye. R. at 40.

The ALJ considered the opinions of both State Agency medical consultants and how they determined that the Plaintiff is limited to a medium exertional level with postural, environmental, and visual limitations. *Id.* The ALJ found their determination to be partially persuasive and found that with the treating source objective evidence, the record as a whole supports frequent performance of tasks requiring near and far acuity bilaterally, as well as requiring depth perception with the left eye. *Id.* Because of Plaintiff's diabetic neuropathy, the ALJ would then limit Plaintiff to a light exertional level. *Id.* The ALJ properly conducted an RFC analysis in finding that Plaintiff

14

is able to perform work at a "light exertional level" with restrictions, and, therefore, finding that Plaintiff is capable of performing her past work as a medical clerk. *Id.* at 40-41. Accordingly, the undersigned finds that the ALJ properly evaluated the Plaintiff's RFC assessment by building a logical bridge, using Plaintiff's medical records and limitations, to justify his conclusion that a light exertional level RFC is appropriate.

Accordingly, the undersigned finds that in his decision, the ALJ sufficiently articulated his reasoning to deny Plaintiff DIB and SSI, and his decision was supported by substantial evidence. Therefore, it is hereby

**ORDERED** that Plaintiff's Motion for Summary Judgment (Dkt. No. 9) is **DENIED**, and Defendant's Motion for Summary Judgment (Dkt. No. 14) is **GRANTED**. It is further

**ORDERED** that the decision of the Commissioner is hereby **AFFIRMED**, and this case is now **CLOSED.**

/s/
Ivan D. Davis
United States Magistrate Judge

October 1, 2024
Alexandria, Virginia